UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:98-cr-00171-GEB |
| Plaintiff, | |
| v. | SENTENCING DECISION FOLLOWING REMAND |
| DANIEL ROSEN, HELMI MANSOUR and AYMAN MANSOUR, | |
| Defendants. | |

The Ninth Circuit remanded sentencing in this action for further proceedings in light of <u>United States v. Booker</u>, 543 U.S. 220 (2005), and <u>United States v. Ameline</u>, 409 F.3d 1073 (9th Cir. 2005) (en banc). <u>Ameline</u> requires a district court on remand to consider whether the sentence previously imposed "would have been materially different had the district court known that the Guidelines were advisory. . . ." 409 F.3d at 1084. Following remand, I issued an Order to the parties on August 19, 2005, in which their views were requested on the issue. On December 19, 2005, Defendants Daniel Rosen ("Rosen") and Ayman Mansour filed <u>Ameline</u> briefs, in which both Defendants assert their sentences would have been materially different had the guidelines been advisory. On January 17, 2006, Helmi Mansour

1

filed a "Notice Opting Out of <u>Ameline</u> Re-sentencing."

To determine the remand issue, I have considered the following: both Defendants' Presentence Investigation Reports ("PSR"); the transcripts of Defendants' sentencing hearings; and Rosen's and Ayman Mansour's respective <u>Ameline</u> Briefs.

Each Defendant's re-sentencing request is discussed below.

<u>Defendant Rosen</u>

Rosen was convicted on all twenty-three counts charged against him, including conspiracy to distribute list I chemicals under 21 U.S.C. § 846, 841 (d)(1). Rosen's Sentencing Guideline range was determined to be 188-235 months, and the probation officer recommended Rosen be sentenced at the bottom of that range. (Rosen's PSR at ¶ 85.) As revealed at trial and in his PSR, Rosen's business generated millions of dollars in proceeds from pseudoephedrine sales.

At Rosen's sentencing hearing held on October 13, 2000, the government moved for an upward departure from the Guideline range and Rosen moved for a downward departure. I was not persuaded by the government's motion, and declined to grant Rosen's downward departure motion because during his trial testimony, Rosen attempted to "dup[e] the jury" by "feign[ing] ignorance of the truth" of the charges against him. (Sentencing Hr'g Tr. at 52, 56, Oct. 13, 2000.)

During Rosen's sentencing hearing, I referenced sentencing factors in 18 U.S.C. § 3553(a), specifically "the need for the sentence to reflect[] the seriousness of the offense[s,]" "deterrence as far as other members of society is concerned," and the fact that Rosen's crime fostered violence. I concluded these factors supported a sentence at the top of the Guideline range. (<u>Id.</u> at 57-59.) However, I noted that § 3553(a) calls for "a sentence sufficient but

not greater than necessary to comply with the purposes set forth in the section." (Id. at 59.) I then considered the "aspect of the deterrent factor which . . . focuses on whether a sentence is going to deter the defendant in front of me[,] . . . the factor that concerns protecting the public from further crimes of the defendant[,]" and "the disruptive impact . . . incarceration [would] have on the defendant's personal life[,]" and found these factors supported a sentence at the bottom of the Guideline range. (Id. at 57-59.) I then sentenced Rosen at the bottom of that range.

The record reveals I treated Rosen's Guideline range as more than just one of several factors to be considered during sentencing, United States v. Zavala, 443 F.3d 1165, 1171 (9th Cir. 2006), and did not "attempt to find the most reasonable sentence for [Rosen] within the territory of all possible reasonable sentences." Id. at 1170 (emphasis added). But consideration of the sentencing record and bearing in mind that the "Guideline calculation" is to be accorded no "greater weight than [what is to be] accord[ed] the other § 3553(a) factors[,]" I have decided that even sentencing Rosen under the advisory guidelines would not result in a materially different sentence than what he received because of how I weighed the § 3553(a) factors discussed during his sentencing. Id. at 1171.

Ayman Mansour

Ayman Mansour was convicted on the three counts charged against him, including conspiracy to distribute list I chemicals under 21 U.S.C. § 846, 841 (d)(1). Ayman Mansour's Sentencing Guideline range was determined to be 135-168 months, and the probation officer recommended Ayman Mansour be sentenced at the top of that range. (Defendant Mansour's PSR at ¶ 87.)

3

1        At his sentencing hearing held on February 2, 2001, I
2   declined to grant Ayman Mansour's motion for downward departure
3   because I felt he had been dishonest throughout his trial and
4   sentencing proceedings.  (Sentencing Hr'g Tr. at 74, Feb. 1, 2001.)  I
5   also expressed discomfort with the recommendation in the PSR that
6   Ayman Mansour be sentenced at the top of his Guideline range, stating
7   "I have a problem going there. . . . His sentencing range involves a
8   lot of years."  (Id. at 73.)

9        During the sentencing hearing, I focused primarily on the
10  deterrence factor in § 3553(a).  See United States v. Mix, 442 F.3d
11  1191, 1197 (9th Cir. 2006) ("A district court is not required to refer
12  to each factor listed in § 3553(a).").  Although I was uncertain how
13  much time would be necessary to deter him from further criminal
14  activity, I explained that a sentence at the bottom of the range,
15  roughly eleven and one-fourth years, "is a long time for an individual
16  to serve in prison.  It gives the individual a lot of time to think
17  about the mistakes he made in violating the law."  (Id. at 74.)  I
18  also considered Ayman Mansour's background, as was evidenced when I
19  stated "[t]he only prison time he has served in the past is one day.
20  He's never been to jail before except for one day."  (Id. at 73.)  In
21  light of these two factors, I ultimately determined that a "sentence
22  [at the bottom of the Guidelines] would serve the purposes of 3553."
23  (Id. at 74.)

24       The record reveals I treated Ayman Mansour's Guideline range
25  as more than just one of several sentencing factors and that I did not
26  heed present law that accords the "Guideline [range] calculation" no
27  "greater weight than [is] accord[ed] the other § 3553(a) factors."
28  Zavala, 443 F.3d at 1171.  Nor did I "attempt to find the most

4

reasonable sentence for [Ayman Mansour] within the territory of <u>all</u> possible reasonable sentences." <u>Id.</u> at 1170 (emphasis added). But even under the post-<u>Booker</u> and <u>Ameline</u> sentencing regimen, Ayman Mansour's sentence would not be materially different; Ayman Mansour was involved with the operation of "front" business for the storage and shipping of pseudoephedrine, and the § 3553 factors discussed during his sentencing hearing, as well as the factors considering the seriousness of the offense, promoting respect for the law, and providing just punishment for the offenses, reveal his sentence was appropriate and would not be materially different if imposed again.

IT IS SO ORDERED.

Dated:  June 5, 2006

<u>/s/ Garland E. Burrell, Jr.</u>
GARLAND E. BURRELL, JR.
United States District Judge